THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE PEPPERS, Defendant-Appellant.

First District (2nd Division)   No. 1—03—2543

Opinion filed September 30, 2004.

Michael J. Pelletier and Maya Szilak, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Margaret

J. Campos, and Michelle L. Feola, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

This garden-variety drug case raises a fourth amendment question that has commanded the attention of federal and state courts across the nation. The same answer keeps coming up—the government can require a convicted felon to undergo a blood or saliva test for submission to state and national DNA databanks without individualized suspicion that the felon has committed some other crime. That is our answer in this case.

Following a bench trial, defendant Willie Peppers was convicted of possession of a stolen motor vehicle and possession of a controlled substance. The trial court sentenced defendant to five years' imprisonment for possession of a stolen vehicle and a concurrent two-year term for possession of a controlled substance. We affirm.

FACTS

At trial, Officer Jesse Farmer testified that at 11:30 p.m. on September 19, 2002, he and his partner responded to a call at 534 West Division Street in Chicago. As they were leaving, they observed a car entering the parking lot without its headlights lit. Officer Farmer checked the license plates of the car and learned it was stolen. When the officers approached the car, Farmer noticed defendant was the driver. He arrested defendant and performed a custodial search. Farmer found a clear plastic bag in defendant's front pocket containing 24 foil packets of white powder suspected to be heroin. Defendant told police he was renting the car from someone. Later, defendant said he believed "it was probably stolen."

Officer Farmer testified he maintained custody of the suspected narcotics until he inventoried them under number 10031590.

The parties stipulated to the following:

"[T]he 24 packets recovered from the defendant and inventoried under Inventory No. 10031590, that the chain of custody on that item was preserved at all times and it was properly sealed and inventoried; that it was sent to the Illinois State Police Crime Lab where it was received by Arthur Wethers.

It would be stipulated that Mr. Wethers if called to testify would be qualified by this Court as an expert in the forensic science of testing for the presence of controlled substances. Mr. Wethers would tell your Honor that he received that inventoried item in a sealed condition; and that he opened it and found it to be 24 packets, that he opened and weighed and tested these packets; and that his

conclusion was that the powdery substance was 1.06 grams of heroin."

When the trial judge asked, "That is within a reasonable degree of scientific certainty?" the parties stipulated it was. After the stipulation was entered, both parties rested.

The trial court convicted defendant on both counts, sentencing him to five years' imprisonment on possession of a stolen motor vehicle and to a concurrent two-year term for possession of a controlled substance.

Defendant contends: (1) the trial court's order, pursuant to section 5—4—3 of the Unified Code of Corrections (730 ILCS 5/5—4—3 (West 2002)), compelling defendant to provide a blood sample for DNA identification databases, violated defendant's fourth amendment rights; (2) the State failed to prove him guilty beyond a reasonable doubt because the State failed to offer a proper foundation for the stipulated expert opinion that the seized items were heroin; and (3) the trial court erroneously determined defendant was ineligible for TASC (Treatment Alternatives for Safe Communities) probation based on his prior felony convictions.

DECISION

I. Constitutionality of Section 5—4—3 of the Unified Code of Corrections

In the last 15 years, state governments began to enact DNA collection statutes. All 50 states and the federal government (see 42 U.S.C. §§ 14131 through 14134 (2000)) have some type of DNA collection statute that requires some or all convicted felons to submit a tissue sample—blood, saliva, or other—for DNA profile analysis and storage in the DNA databank. See *Maryland v. Raines*, 383 Md. 1, 8, 857 A.2d 19, 23 (2004).

In this case, after defendant was convicted and sentenced to prison, the trial court, as it was required to do, ordered him to give a blood sample for the state and national DNA databases pursuant to section 5—4—3 of the Unified Code of Corrections (the Code) (730 ILCS 5/5—4—3 (West 2002)). Defendant contends the order is an unreasonable search and seizure under the fourth amendment of the United States Constitution (U.S. Const., amend. IV). Because the parties agree on the facts, we apply a *de novo* standard of review.

Defendant is faced with a tidal wave of authority against his position. Every court of review that has decided the issue has upheld the

DNA testing statute.[1] There has been a plethora of reported decisions, as cited in *Green v. Berge*, 354 F.3d 675, 679 (7th Cir. 2004), and *People v. Garvin*, 349 Ill. App. 3d 845, 854, 812 N.E.2d 773 (2004).

While reviewing courts agree on the result, they do not agree on how to get there. There are two essential routes, each tested by the proposition that convicted felons, whether incarcerated, on parole, or on probation, have at least some expectation of privacy, albeit diminished. See *United States v. Knights*, 534 U.S. 112, 119-20, 151 L. Ed. 2d 497, 505, 122 S. Ct. 587, 591-92 (2001); *People v. Lampitok*, 207 Ill. 2d 231, 250-51, 798 N.E.2d 91 (2003).

Thus far, neither the United States Supreme Court nor the supreme court of this state has flatly decided whether being on probation completely eliminates a convicted felon's reasonable expectation of privacy. In *Knights*, the Supreme Court expressly declined to decide the issue. *Knights*, 534 U.S. at 118, 151 L. Ed. 2d at 504-05, 122 S. Ct. at 591. In *Lampitok*, our supreme court said, in *dicta*, "[W]e conclude that this comparison [with *Knights*] lends support to the assertion that a probation search of [the probationer] upon no individualized suspicion would be constitutionally unreasonable." *Lampitok*, 207 Ill. 2d at 252.

What, if anything, these decisions portend for the validity of mandatory DNA testing statutes is unclear.

A further consideration is the well-established principle that the taking of blood by the state is an invasion of constitutionally protected privacy rights. *Schmerber v. California*, 384 U.S. 757, 767-68, 16 L. Ed. 2d 908, 918, 86 S. Ct. 1826, 1834 (1966). If the seizure is to withstand constitutional scrutiny, there must be a sufficient state interest that outweighs the convicted felon's expectation of privacy. *Bell v. Wolfish*, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481, 99 S. Ct. 1861, 1884 (1979).

There are two basic approaches—"special needs" and a balancing of state interest against any expectation of privacy.

The "special needs" test, relied on by the defendant, is derived from two decisions of the United States Supreme Court. In *City of Indianapolis v. Edmond*, 531 U.S. 32, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000), the Supreme Court struck down an Indianapolis vehicle checkpoint policy on fourth amendment grounds. The Court said, "We decline to suspend the usual requirement of individualized suspicion

---

[1]We do not consider the panel decision in *United States v. Kincade*, 345 F.3d 1095 (9th Cir. 2003), because that decision was overturned by the court of appeals, sitting *en banc*. See *United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004).

where the police seek to employ a checkpoint primarily for the ordinary enterprise of investigating crimes." *Edmond*, 531 U.S. at 44, 148 L. Ed. 2d at 345, 121 S. Ct. at 455. Later, in *Illinois v. Lidster*, 540 U.S. 419, 157 L. Ed. 2d 843, 124 S. Ct. 885 (2004), the Supreme Court recognized the constitutional validity of a checkpoint program whose primary law enforcement purpose was not to unearth incriminating evidence from those who were stopped, but to ask assistance from the public to solve a specific crime.

The second decision relied on by the defendant is *Ferguson v. City of Charleston*, 532 U.S. 67, 149 L. Ed. 2d 205, 121 S. Ct. 1281 (2001), where the Supreme Court overturned nonconsensual urine drug tests performed by hospitals on pregnant women who met certain criteria. The immediate purpose of the testing was to arrest and prosecute tested women for narcotics violations. The Court held the testing did not fit any "special need" of law enforcement personnel. *Ferguson*, 532 U.S. at 82-83, 149 L. Ed. 2d at 219-20, 121 S. Ct. at 1291. The Court observed these women did not have the diminished expectation of privacy held by probationers or people in jail. *Ferguson*, 532 U.S. at 79 n.15, 149 L. Ed. 2d at 217 n.15, 121 S. Ct. at 1289 n.15. Because of the lack of a special need, no balancing of the competing interests at stake was required.

In *Garvin*, 349 Ill. App. 3d 845, 812 N.E.2d 773, the Second District of our Appellate Court joined those reviewing courts that have adopted the balancing test. Upholding the validity of the statute we examine in this case, *Garvin* rejected the special needs approach in favor of the balancing test. That is, the court weighed the State's interest in the search and seizure against the individual's reduced expectation of privacy and the nonintrusive nature of the search. Blood testing is a relatively slight intrusion, said the court, while "it is beyond dispute that the State has a strong interest in deterring and prosecuting recidivist criminal acts." *Garvin*, 349 Ill. App. 3d at 855.

A court in this district has agreed with *Garvin*, holding the balancing test was the better way to uphold section 5—4—3. *People v. Hall*, 352 Ill. App. 3d 537, 546 (2004). *Hall* cited *People v. Wealer*, 264 Ill. App. 3d 6, 636 N.E.2d 1129 (1994), as "definitively rejecting the special needs test and adopting the balance test." *Hall*, 352 Ill. App. 3d at 546, citing *Wealer*, 264 Ill. App. 3d at 14-15. *Wealer* examined a testing statute that applied only to sex offenders. Covering both bases, the court in *Hall* held the defendant would be no better off under the special needs test:

> "If a special need does exist, we must then evaluate the reasonableness of the intrusion; this involves a balancing analysis of the government's special need and the defendant's privacy rights." *Hall*, 352 Ill. App. 3d at 549.

Here, again, the State's interests prevailed over the defendant's privacy rights.[2]

The Seventh Circuit, upholding a Wisconsin DNA testing statute similar to ours, relied on the special needs test:

> " 'The DNA Act, while implicating the Fourth Amendment, is a reasonable search and seizure under the special needs exception to the Fourth Amendment's warrant requirement because the desire to build a DNA database goes beyond the ordinary law enforcement need.' " *Green*, 354 F.3d at 677, quoting *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir. 2003).

■ Regardless of which analytic approach we follow, we see a common thread that leads to the conclusion the fourth amendment is not offended by the statute. Incarcerated felons have a substantially diminished expectation of privacy. The testing, by needle or swab, is minimally intrusive. The State is not investigating a particular or specific crime. It is conducting a technologically accurate identification procedure that will enhance the administration of justice—reaching back to solve past crimes and extending forward to identify future offenders, convicting the guilty and acquitting the innocent.[3]

We admit to some discomfort with the seeming abandonment of the requirement of individualized suspicion in these DNA testing cases. But there is nothing new about it. Testing for the presence of drugs without individualized suspicion was upheld by the Supreme Court in *Skinner v. Ry. Labor Executives Ass'n*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989) (testing of railway executives); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 103 L. Ed. 2d 685, 109 S. Ct. 1384 (1989) (customs officers); and *Vernonia School District 47J v. Acton*, 515 U.S. 646, 132 L. Ed. 2d 564, 115 S. Ct. 2386 (1995) (high school students participating in athletics). In each case, a special need for the search, beyond the normal need for law enforcement, was found, based on some compelling state interest.

We decline to choose between the special needs and balancing approaches. This is an issue that remains in search of a principled analysis. Either way, the result is the same. The statute survives a

---

[2]A summary of the cases applying each analytic approach can be found in *Kincade*, 379 F.3d at 830-32.

[3]On the day this opinion was filed, September 30, 2004, another panel of this district filed an opinion unanimously upholding the constitutionality of section 5—4—3(a)(3.5) (730 ILCS 5/5—4—3(a)(3.5) (West 2002)). The authoring judge used the balancing test; a specially concurring judge relied on the special needs analysis; and another specially concurring judge rejected both the balancing and special needs tests, opting for the proposition that the fourth amendment does not apply within the confines of a prison cell.

fourth amendment challenge. We simply observe vigilance is required to ensure amorphous concepts of compelling state interest do not subsume our dearly won right to privacy.

II. Foundation for Stipulation Evidence

Defendant contends Wethers' stipulated testimony was insufficient to prove the recovered substance was heroin because there was no evidence identifying which tests he performed, whether the tests were reliable, or whether any equipment used was functioning properly. The State contends defendant waived this contention.

"To sustain a conviction for possession of a controlled substance with intent to deliver, the State is required to prove that 'the substance at issue is in fact a controlled substance.' " *People v. Rucker*, 346 Ill. App. 3d 873, 890, 803 N.E.2d 31 (2003), quoting *People v. Raney*, 324 Ill. App. 3d 703, 705-06, 756 N.E.2d 338 (2001). When a defendant challenges the sufficiency of the evidence, the proper standard of review is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Williams*, 193 Ill. 2d 306, 338, 739 N.E.2d 455 (2000).

The sufficiency of stipulated evidence to prove the presence of a controlled substance is not a novel issue for this court. When faced with this issue in the past, Illinois courts have used two different approaches. First, courts have applied the rationale in *People v. DeLuna*, 334 Ill. App. 3d 1, 777 N.E.2d 581 (2002), finding any challenge to the sufficiency of stipulated expert testimony based on lack of proper foundation is waived unless properly preserved in the trial court. See, e.g., *People v. Hill*, 345 Ill. App. 3d 620, 631, 803 N.E.2d 138 (2003). Using a second method, courts have declined to invoke waiver and examined the substantive sufficiency of the contested stipulations to prove the controlled-substance element of the crime. See *Rucker*, 346 Ill. App. 3d 873; *People v. Washington*, 343 Ill. App. 3d 889, 800 N.E.2d 436 (2003).

"Both a specific trial objection and a written posttrial motion are required to preserve an issue for appeal." *Hill*, 345 Ill. App. 3d at 631, citing *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). On the other hand, a defendant may attack the sufficiency of the evidence at any time; the issue cannot be waived. *People v. Cowans*, 336 Ill. App. 3d 173, 175-76, 782 N.E.2d 779 (2002).

Although defendant admits he failed to object at trial or raise the issue in a written posttrial motion, he contends the waiver rule does not apply because he is challenging the sufficiency of the evidence rather than its admissibility. Under the *DeLuna* waiver method,

defendant draws a false distinction. *DeLuna* suggests any appeal contending lack of proper foundation is an attack on the evidence's admissibility, *not* its sufficiency, regardless of the language used by the appellant. *DeLuna*, 334 Ill. App. 3d at 20.

In *DeLuna*, the defendant contended the State's evidence was insufficient to prove him guilty because the forensic expert did not say whether the type of facts he used was reasonably relied on by experts in his field or whether the testing equipment was functioning properly. This court rejected the defendant's contention that he was attacking the sufficiency of the evidence, not its admissibility, since his challenge was to the failure to lay a proper foundation for proof of an element of the crime. The court held defendant waived the issue for purpose of appeal by failing to object when the expert testified. *DeLuna*, 334 Ill. App. 3d at 19-20.

In *People v. Besz*, 345 Ill. App. 3d 50, 54-57, 802 N.E.2d 841 (2003), and *Hill*, 345 Ill. App. 3d at 631, this court applied the same waiver principles when the defendants contended the State failed to offer a proper foundation for stipulated testimony. In both cases, the court rejected the defendants' attempts to "recharacterize" their foundational attacks as challenges to the sufficiency of the evidence to avoid waiver. *Hill*, 345 Ill. App. 3d at 631 (expressly rejected the method used in *Rucker*, 346 Ill. App. 3d 873, 803 N.E.2d 31, and *Washington*, 343 Ill. App. 3d 889, 800 N.E.2d 436, holding: "The *DeLuna* and *Besz* courts recently explained that a defendant's challenge to the foundation for an expert's opinion is an issue of admissibility of the evidence, not sufficiency of the evidence, and the defendant waived his right to raise this argument on appeal by stipulating to the expert's testimony at trial"); *Besz*, 345 Ill. App. 3d at 57; *People v. Durgan*, 346 Ill. App. 3d 1121, 1133, 806 N.E.2d 1233 (2004).

*Hill* and *Durgan* concluded courts would discourage stipulations if they required parties to include every foundational element that would be required if the expert testified. We have refused to do so, noting the positive role stipulations play to promote the disposition of cases, simplify the issues, and save litigants expense. *Durgan*, 346 Ill. App. 3d at 1134, quoting *People v. Coleman*, 301 Ill. App. 3d 37, 48, 704 N.E.2d 690 (1998).

Defendant contends the reasoning in *DeLuna* was "fundamentally flawed" and he relies on *Raney*, 324 Ill. App. 3d 703, 756 N.E.2d 338, and *People v. Hagberg*, 192 Ill. 2d 29, 733 N.E.2d 1271 (2000). In *Raney* and *Hagberg*, the defendants attacked the foundation of expert testimony, contending that without proper foundation the expert testimony regarding the results of narcotics testing was insufficient to prove them guilty beyond a reasonable doubt. The courts agreed.

*Raney*, 324 Ill. App. 3d at 710 (expert did not testify about the accuracy of the testing equipment); *Hagberg*, 192 Ill. 2d at 34 (officer's testimony about narcotics field test was insufficient evidence to prove the defendant possessed a controlled substance).

Neither *Raney* nor *Hagberg* dealt with stipulated evidence. The experts testified at trial. This court found neither case applies when a defendant challenges the sufficiency of a stipulation. *Rucker*, 346 Ill. App. 3d at 892; see *Besz*, 345 Ill. App. 3d at 54.

■ Because we follow the approach in *DeLuna*, *Hill*, *Besz*, and *Durgan*, we find the issue is waived. We may review a waived issue if we determine plain error has occurred. *People v. Chapman*, 194 Ill. 2d 186, 225-26, 743 N.E.2d 48 (2000). In this case, we need not conduct plain error analysis because we believe there was no error. Defendant stipulated the chemist was an expert in forensic chemistry, that his tests were commonly accepted in the scientific community, and that the items tested positive for heroin. No additional foundation was required. If defendant wanted to challenge the foundation of the expert's testimony, he should not have agreed to the stipulation.

Even if we decline to invoke waiver and instead examine the substance of the stipulation, we would find it was sufficient to uphold the conviction.

*Washington* and *Rucker* involved stipulations very similar to the one in this case. In each case, the parties stipulated that if the forensic chemist were called, he or she would be qualified as an expert. They further stipulated the experts performed tests commonly accepted in the area of forensic chemistry for ascertaining the presence of a controlled substance and opined within a reasonable degree of scientific certainty that the items tested positive for the presence of cocaine. *Washington*, 343 Ill. App. 3d at 893; *Rucker*, 346 Ill. App. 3d at 879.

In both cases, the defendants appealed, contending there was insufficient evidence to support convictions for possession of a controlled substance because the stipulations lacked the proper foundation.

Specifically, the defendants contended the State failed to: "(1) identify what tests were performed; (2) indicate that any equipment used in performing the tests was functioning properly at the time of the testing; or (3) explain why the chemist knew the results were accurate." *Washington*, 343 Ill. App. 3d at 899; *Rucker*, 346 Ill. App. 3d at 890.

After examining the stipulations, the courts in both cases determined the trial judges reasonably concluded the parties intended to stipulate that the chemists followed basic scientific procedure. In

both cases, the stipulations were sufficient to support the possession convictions. *Washington*, 343 Ill. App. 3d at 901; *Rucker*, 346 Ill. App. 3d at 892.

Regardless of which method we choose to adopt, we would affirm the trial court's judgment. If we apply the first method, we conclude defendant's contention is merely an admissibility argument disguised as a sufficiency of evidence challenge and, thus, it is waived. As *De-Luna* and its progeny explain, defendant was in a better position at trial to object to the evidence where the State could have cured any foundational error. See *Hill*, 345 Ill. App. 3d at 632. By participating in the offering of the stipulated evidence without objection, the defendant forfeited any challenge on appeal regarding the admissibility of the evidence. See *Besz*, 345 Ill. App. 3d at 56-57; see also *Rucker*, 346 Ill. App. 3d at 892 (a court can reasonably assume the parties intended to stipulate the expert opinion had an adequate foundation).

Applying the second method and examining the stipulation's substance, we conclude it was sufficient to support defendant's conviction.

Here, the parties stipulated that Wethers, if called as a witness, would be qualified as an expert and would testify that he tested the items recovered from defendant and found them to be heroin. Defendant stipulated that Wether's findings were "within a reasonable degree of scientific certainty."

We believe the stipulation was sufficient to prove the substance recovered from defendant was heroin. Although defendant contends he "never stipulated to the propriety, accuracy or identity of the testing methods used, or to the ultimate fact that the substance recovered from him and tested was heroin," the trial court could reasonably infer the parties intended to remove those issues from contention by stipulating to the expert's opinion. The stipulated evidence is sufficient to uphold defendant's conviction for possession of a controlled substance.

III. Eligibility for TASC Probation

■ Defendant contends the court erroneously determined he was not eligible for TASC probation due to his felony convictions.

Under the Alcoholism and Other Drug Abuse and Dependency Act (Act) (20 ILCS 301/1 *et seq.* (West 2002)), "[a]n addict or alcoholic who is charged with or convicted of a crime may elect treatment under the supervision of a licensed program," unless he falls into one of the nine exceptions. 20 ILCS 301/40—5 (West 2002). One of the exceptions applies if "the person is on probation or parole and the appropriate parole or probation authority does not consent to that election." 20 ILCS 301/40—5(5) (West 2002).

The trial court has broad discretion when determining whether an individual is eligible to participate in TASC treatment, and we will not alter that determination absent an abuse of discretion. *People v. Robinson*, 299 Ill. App. 3d 426, 444, 701 N.E.2d 231 (1998).

Although defendant concedes he was not eligible for general probation, he contends he is entitled to a new sentencing hearing because the trial court mistakenly determined he was ineligible for TASC probation based on his offense.

Illinois law requires a defendant to affirmatively show his parole officer's consent to establish his eligibility for TASC probation. *People v. Phillips*, 66 Ill. 2d 412, 416, 362 N.E.2d 1037 (1977); *People v. Blair*, 102 Ill. App. 3d 1018, 1025, 429 N.E.2d 1375 (1981); *People v. Berry*, 118 Ill. App. 3d 1024, 1026, 455 N.E.2d 868 (1983). Although these cases interpreted earlier versions of the Act, they are instructive as to which party bears the burden of proving defendant's eligibility to seek treatment in lieu of a prison sentence.

In this case, we cannot conclude the trial court abused its discretion when it denied defendant's request for TASC probation. The trial court's statements do not clearly show an error. Defendant's conviction was "not probationable" in the sense he was ineligible for standard probation. The court did not indicate that defendant's conviction precluded it from consideration of the Act. In fact, as the State points out, the court seemed to consider defendant's eligibility for TASC under section 40—10 (20 ILCS 301/40—10 (West 2002)) by reviewing defendant's drug abuse, earlier probation violations, failure to complete boot camp, and the parole violation before imposing the sentence.

More importantly, defendant failed to meet his burden to show he qualified for treatment under the Act. Failure to procure his parole officer's consent rendered defendant ineligible under section 40—5 of the Act (20 ILCS 301/40—5 (West 2002)). See *Berry*, 118 Ill. App. 3d at 1026-27. Defense counsel never submitted information from defendant's parole officer showing his consent to TASC probation, despite his attempts to obtain information from defendant's parole officers before advising defendant on a possible plea bargain. As a result, defendant was not eligible to elect treatment under section 40—10 (20 ILCS 301/40—10 (West 2002)).

We affirm defendant's sentence.

CONCLUSION

We find section 5—4—3 of the Code does not violate the fourth amendment. We find the State presented sufficient evidence to support defendant's conviction for possession of a controlled substance.

Finally, we affirm defendant's sentence, finding the trial court did not abuse its discretion when it denied defendant TASC probation.

Affirmed.

BURKE, P.J., concurs.

JUSTICE HALL, dissenting:
I respectfully dissent. I believe that the DNA identification statute (730 ILCS 5/5—4—3 (West 2002)), as amended by Public Act 92—829 (Pub. Act 92—829, eff. August 22, 2002), is unconstitutional because it requires all convicted felons to submit their DNA samples, even first-time offenders convicted of nonviolent felonies. Section 5—4—3 was enacted to establish a genetic identification database of recidivist criminal offenders. *People v. Garvin*, 349 Ill. App. 3d 845, 853, 812 N.E.2d 773 (2004). If the government insists on using deterrence of violent crime and recidivism as governmental interests justifying the DNA identification statute (*People v. Wealer*, 264 Ill. App. 3d 6, 16, 636 N.E.2d 1129 (1994)), then in order to be held constitutional the statute should be tailored to require DNA samples only from that class of offenders committing violent felonies or showing high rates of recidivism. See, *e.g.*, M. Hibbert, *DNA Databanks: Law Enforcement's Greatest Surveillance Tool?*, 34 Wake Forest L. Rev. 767, 769 (1999) (noting that DNA databases were originally created to help solve crimes involving certain classes of offenders with statistically high recidivism rates such as sex offenders and violent felons).

I believe that requiring DNA samples from criminals convicted of nonviolent felonies cannot be justified under either the special needs exception or the balancing test. Under the special needs exception, a search and seizure may be reasonable under the fourth amendment absent probable cause or individualized suspicion, where the intrusion is minor or the person to be searched has a diminished expectation of privacy. *Fink v. Ryan*, 174 Ill. 2d 302, 306, 673 N.E.2d 281 (1996). "The dominant feature of cases utilizing special needs as an exception to the general warrant and probable cause requirements is the court's identification of an administrative justification independent of a law enforcement purpose." *Wealer*, 264 Ill. App. 3d at 12. The mandatory collection of DNA evidence from convicted felons for the purpose of deterring violent crime and recidivism is part and parcel of the State's general interest in law enforcement and therefore such a purpose cannot be considered a special need. The DNA identification statute does not fall within the special needs exception to the probable cause or individualized suspicion requirement.

Under the balancing test, in order to determine which interest is more compelling, the privacy interest of the prisoner in remaining free of bodily invasion is balanced against the State's interest in carrying out the search. *Garvin*, 349 Ill. App. 3d at 855; *Wealer*, 264 Ill. App. 3d at 17. I believe that nonviolent felons' privacy interests are more compelling than the State's interest in compulsory DNA collection. It is true that prisoners have a greatly reduced expectation of privacy. However, this reduction is generally related to prison security concerns and prison administration. See *Jones v. Murray*, 962 F.2d 302, 311-12 (4th Cir. 1992) (Murnaghan, J., concurring in part and dissenting in part). Prisoners retain those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration. *Hudson v. Palmer*, 468 U.S. 517, 523, 82 L. Ed. 2d 393, 401, 104 S. Ct. 3194, 3198 (1984).

The DNA identification statute was not enacted to identify prisoners for any institutional penal purpose. The stated justification for the creation of the statute is deterring and prosecuting recidivists and the facilitation of future law enforcement. See *Wealer*, 264 Ill. App. 3d at 16. However, in light of the tenuous statistical link connecting nonviolent felons to the commission of future violent crime, there is very little evidence to substantiate a theory that DNA testing of nonviolent felons would assist in solving future violent crimes. *Jones v. Murray*, 962 F.2d at 314 (Murnaghan, J., concurring in part and dissenting in part). Law enforcement authorities are allowed to conduct DNA identification analysis on prisoners' bodily fluids, not because they suspect a prisoner of having committed unsolved crimes, but rather because of the possibility that any prisoner may commit future crimes. This "rationale erodes the criminal doctrine of 'probable cause,' or the notion that law enforcement officers must have at least a reasonable suspicion of illegal activity to justify a violation of citizens' constitutional rights of privacy and freedom from warrantless search." 34 Wake Forest L. Rev. at 816-17. I do not believe that the mandatory collection of DNA evidence from prisoners convicted of nonviolent felonies is justified, given the limited and noncompelling State interest in including these offenders in the DNA database.