821 N.E.2d 733 (2004)
354 Ill. App.3d 564
290 Ill.Dec. 421
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Terrence FOSTER, Defendant-Appellant.
No. 1-03-1289.
Appellate Court of Illinois, First District, First Division.
December 20, 2004.
Rehearing Denied January 28, 2005.
*734 Michael J. Pelletier, Deputy Defender, and Elizabeth A. Botti, Assistant Appellate Defender, Office of the State Appellate Defender, Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb, Janet Powers Doyle, and Sally L. Dilgart, Assistant State's Attorneys, of counsel), for Appellee.
Presiding Justice CAHILL delivered the opinion of the court:
Defendant was convicted in a bench trial of unlawful delivery of a controlled substance within 1,000 feet of a church and sentenced to six years in prison. On appeal, *735 defendant argues: (1) he was not proven guilty beyond a reasonable doubt because the State did not offer evidence that the New Hope Church was a place used primarily for religious worship; (2) the State failed to prove a proper chain of custody; and (3) section 5-4-3(a)(3.5) of the Unified Code of Corrections (Code) (730 ILCS 5/ 5-4-3(a)(3.5) (West 2002)) violates defendant's constitutional right to be free from unreasonable searches and seizures. We affirm.
The following evidence was presented at defendant's trial.
Officer Scott Korhonen testified that at approximately 1 p.m. on June 14, 2002, he was conducting surveillance at 4310 West Crystal Street in Chicago. Korhonen saw defendant, who lived at the address, "shouting [']rocks ['] * * * to passing vehicles and people walking up and down the street." Two men approached defendant and gave him money. Defendant removed a bag from his pocket, removed two items from the bag and handed one item to each of the men. Korhonen then witnessed a similar transaction between defendant and Mark Geyer. As Korhonen approached defendant and Geyer, Geyer dropped a bag containing a white, rock-like substance on the ground. After arresting defendant and Geyer, Korhonen retrieved the bag from the ground. Korhonen later inventoried the item by placing the bag in a sealed container and assigning it a number. The parties stipulated that the item recovered by Korhonen was inventoried under number 2724465 in a sealed condition. The item was then sent to the crime lab for analysis. Korhonen also searched defendant and recovered $140.
The parties stipulated that if called as a witness, Tom Nyhan would testify he measured the distance from 4310 West Crystal Street to the New Hope Church located at 4255 Division Street. The distance between the two locations measured 580 feet.
The State also offered by way of stipulation the testimony of Angelo Bommarito, a forensic chemist. If called as a witness, Bommarito would testify he received an item under inventory number 2724465 and that "it is his opinion within a reasonable degree of scientific certainty that the chain of custody remained proper." The item was in a sealed condition and contained a chunky substance that weighed .1 gram. Bommarito performed tests accepted in the scientific community on the item to test for the presence of cocaine. The item tested positive for cocaine. Defendant "stipulated with respect to the chain of custody as to the chemist." When asked to clarify the stipulation, the following colloquy took place:
"THE COURT: When you said you stipulate as to the chain at the lab, I don't understand.
* * *
MS. RUBIN [defense attorney]: Meaning that once the forensic chemist received the items, the forensic chemist followed the proper procedures for chain of custody and maintaining that object.
THE COURT: So you are not stipulating that the officer placed the item in an inventory?
MS. RUBIN: Right. I never stipulate to the officer's chain of custody.
MS. FORESTER [Assistant State's Attorney]: Okay. Your Honor, with that the State rests."
Defendant moved for a directed verdict, arguing the State failed to show a proper chain of custody. Defendant cited Officer Korhonen's failure to testify as to the procedures he used to inventory the item. The State responded that Korhonen's testimony that he retrieved the item and personally inventoried the item by placing it *736 in a sealed container was sufficient to establish a proper chain of custody. The trial court denied defendant's motion.
Defendant called Alvin Petty, who testified he went to defendant's home at approximately 1 p.m. on June 14, 2002. Defendant was asleep. Petty woke defendant to tell him Mark Geyer was outside. Petty then went into the basement of defendant's home to visit with defendant's brother. Petty testified the police entered the basement and searched the house. Petty was then taken outside and the police told him he was free to leave. Petty said he did not see defendant selling drugs.
Mark Geyer testified he went to defendant's home at approximately 1 p.m. on June 14, 2002, to speak with defendant's brother. Defendant came outside and Geyer spoke with defendant about his brother. Geyer then saw an unmarked police car approaching. Geyer had a small bag of crack cocaine in his hand that he threw to the ground. Geyer denied purchasing the crack cocaine from defendant.
The trial court found defendant guilty of unlawful delivery of a controlled substance within 1,000 feet of a church. Defendant moved to reconsider or for a new trial on the ground that the State failed to prove a proper chain of custody. The trial court denied defendant's motion. Defendant was sentenced to six years in prison and ordered to submit a DNA sample under section 5-4-3(a)(3.5) of the Code. On appeal, defendant argues: (1) the State failed to prove defendant guilty beyond a reasonable doubt because it did not show New Hope Church was a place used primarily for religious worship; (2) the State did not prove a proper chain of custody; and (3) section 5-4-3(a)(3.5) of the Code violates defendant's constitutional right to be free from unreasonable searches and seizures.
We begin with defendant's argument that the State did not prove him guilty beyond a reasonable doubt because the State failed to show New Hope Church was a place used primarily for religious worship. In resolving a challenge to the sufficiency of the evidence, a reviewing court will view the evidence in the light most favorable to the prosecution and will not reverse unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Evans, 209 Ill.2d 194, 209, 283 Ill.Dec. 651, 808 N.E.2d 939 (2004).
Section 407(b)(2) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/407(b)(2) (West 2002)) makes it a crime to deliver less than one gram of a controlled substance within 1,000 feet of a "church, synagogue, or other building, structure, or place used primarily for religious worship." See also 720 ILCS 570/401(d) (West 2002). Defendant argues to be found guilty under section 407(b)(2), the State was required to prove that New Hope Church was a place used primarily for religious worship. Defendant cites People v. Sparks, 335 Ill.App.3d 249, 269 Ill.Dec. 309, 780 N.E.2d 781 (2002).
At issue in Sparks was whether a building occupied by the Salvation Army was a church within the meaning of section 407(b)(2) of the Act. Sparks, 335 Ill.App.3d at 255-56, 269 Ill.Dec. 309, 780 N.E.2d 781. Noting that the word "church" is not defined in the Act, the court concluded the legislature intended "church" to mean a place used primarily for religious worship. Sparks, 335 Ill.App.3d at 256, 269 Ill.Dec. 309, 780 N.E.2d 781. The court went on to say:
"Although certain traditional physical characteristics such as a steeple and stained glass may help a fact finder identify a place as a church, the presence of such characteristics is not required under the statute. Similarly, *737 there is no statutory requirement that the official title of the place in question have the word `church' in its name. We do not believe that the legislature intended to limit the meaning of the term `church' to a `building, structure, or place' possessing certain specific physical characteristics and nomenclature. Rather, the appropriate focus must be on the manner in which the place is used, i.e., whether its primary use is for religious worship." Sparks, 335 Ill.App.3d at 256, 269 Ill.Dec. 309, 780 N.E.2d 781.
Unlike Sparks, the structure here was by name a "church." We believe this distinction is material in reviewing defendant's challenge to the sufficiency of the State's evidence. In viewing the evidence in the light most favorable to the prosecution, we find a rational trier of fact could have inferred New Hope Church was a church used primarily for religious worship based on its name. See People v. Morgan, 301 Ill.App.3d 1026, 1031-32, 235 Ill.Dec. 355, 704 N.E.2d 928 (1998) (officer's testimony was sufficient to establish the status of park as a "public park" within the meaning of section 407(b)(1); the State was not required to call a city or park district official or produce plat of survey map).
Defendant next argues the State failed to prove a proper chain of custody because there was no evidence to establish the safekeeping, presence and handling of the alleged cocaine from the time Officer Korhonen retrieved the item to the time it was tested by the forensic chemist. Defendant's argument again relates to the sufficiency of the evidence and we will not reverse defendant's conviction unless no rational trier of fact could have found that the item retrieved by Korhonen was the same item tested by Angelo Bommarito. See People v. Harris, 352 Ill.App.3d 63, 68, 287 Ill.Dec. 219, 815 N.E.2d 863 (2004).
When introducing contraband into evidence, the State bears the burden of establishing a chain of custody that is sufficiently complete to render it improbable that the evidence has been tampered with, exchanged or contaminated. Harris, 352 Ill.App.3d at 68, 287 Ill.Dec. 219, 815 N.E.2d 863. Where there is no evidence of tampering, substitution or contamination, the State satisfies its burden by showing reasonable measures were employed to protect the evidence from the time it was seized and that it was improbable the evidence was altered. Harris, 352 Ill.App.3d at 68-69, 287 Ill.Dec. 219, 815 N.E.2d 863. The purpose of the protective measures is to ensure that the substance recovered from the defendant was the same as the substance tested. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863. A sufficient chain of custody does not require every person involved in the chain to testify. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863. Nor must the State exclude all possibilities that the article may have been subject to tampering. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863. Evidence may be properly admitted where there is a missing link in the chain of custody if there is testimony sufficiently describing the condition of the evidence when delivered that matches the description of the evidence when examined. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863.
The defendant in Harris challenged the chain of custody under facts similar to those present here. The arresting officer confiscated two plastic bags from the defendant that contained a white, rock-like substance. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863. The officer kept the items on him until he reached the police station, at which time the officer gave the items to his partner to be inventoried. Harris, 352 Ill.App.3d at *738 69, 287 Ill.Dec. 219, 815 N.E.2d 863. The arresting officer saw his partner inventory the items under number 10030503. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863. In addition to testimony from the arresting officer, the State offered the stipulated testimony of a forensic chemist who testified that he received two items sealed under inventory number 10030503. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863. The items tested positive for cocaine. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863. On appeal from his conviction for possession of a controlled substance, the defendant argued the State failed to establish a proper chain of custody. Harris, 352 Ill.App.3d at 68, 287 Ill.Dec. 219, 815 N.E.2d 863. We disagreed. After noting the absence of actual evidence of tampering, substitution or contamination, we found the State satisfied its burden to show that reasonable measures were taken to protect the evidence from the time it was seized and that it was improbable that the evidence was altered. Harris, 352 Ill.App.3d at 69, 287 Ill.Dec. 219, 815 N.E.2d 863.
We believe Harris is controlling under these facts. Geyer testified he threw a bag of crack cocaine on the ground when he saw Officer Korhonen approach. Korhonen testified he retrieved the bag, placed the item in a sealed container and assigned it an inventory number. Defendant stipulated that the inventory number assigned to the item was 2724465. Defendant also stipulated that the forensic chemist received an item under inventory number 2724465 in a sealed condition and the item tested positive for cocaine. There was no evidence of tampering, substitution or contamination. Nor were there discrepancies between the testimony of the forensic chemist and that of Korhonen. The State satisfied its burden to show that reasonable measures were employed to protect the evidence from the time it was seized and that it was improbable that the evidence was altered.
We acknowledge, as did the court in Harris, that another division of this court found under similar facts that the State failed to establish a proper chain of custody. See People v. Cowans, 336 Ill.App.3d 173, 270 Ill.Dec. 220, 782 N.E.2d 779 (2002). The arresting officer in Cowans testified he retrieved nine small plastic bags with a green tint that contained suspected crack cocaine. Cowans, 336 Ill.App.3d at 177, 270 Ill.Dec. 220, 782 N.E.2d 779. The officer inventoried the items under number 2295494. Cowans, 336 Ill.App.3d at 174, 270 Ill.Dec. 220, 782 N.E.2d 779. The forensic chemist testified by way of stipulation that she received nine items under inventory number 2295494, five of which tested positive for cocaine. Cowans, 336 Ill.App.3d at 175, 270 Ill.Dec. 220, 782 N.E.2d 779. The chemist did not mention that the bags had a green tint. Cowans, 336 Ill.App.3d at 178, 270 Ill.Dec. 220, 782 N.E.2d 779. The court ruled the State failed to show that the items seized were the same items tested because the description of the items by the chemist did not match exactly the description given by the arresting officer. Cowans, 336 Ill.App.3d at 178-79, 270 Ill.Dec. 220, 782 N.E.2d 779. The court also held the State did not establish proof of handling, delivery, presence and safekeeping, which were necessary to establishing chain of custody. Cowans, 336 Ill.App.3d at 179, 270 Ill.Dec. 220, 782 N.E.2d 779. We respectfully disagree with Cowans. We do not believe the State is required to exclude every possibility of tampering or account for every gap in a chain of custody. The State must only show that reasonable measures were employed to protect the evidence from the time it was seized to the time it was tested and that it was improbable that the evidence *739 was altered. Harris, 352 Ill.App.3d at 68, 287 Ill.Dec. 219, 815 N.E.2d 863.
Defendant's final argument concerns whether section 5-4-3(a)(3.5) of the Code violates defendant's constitutional right to be free from unreasonable searches and seizures. See U.S. Const., amend IV. We note that although defendant challenges subsection (a-5) of section 5-4-3, the record shows defendant was sentenced under subsection (a)(3.5), which requires a trial court to order a person convicted of a qualifying felony offense to submit a DNA sample to the state for storage in its DNA databank. 730 ILCS 5/5-4-3(a)(3.5) (West 2002). We confine our analysis to subsection (a)(3.5).
Since the parties submitted their briefs to this court, five panels of our appellate court have decided the constitutionality of compulsory DNA extraction under section 5-4-3 of the Act. See People v. Garvin, 349 Ill.App.3d 845, 285 Ill.Dec. 953, 812 N.E.2d 773 (2004); People v. Hall, 352 Ill.App.3d 537, 287 Ill.Dec. 736, 816 N.E.2d 703 (2004); People v. Ramos, 353 Ill.Ap.3d 133, 288 Ill.Dec. 460, 817 N.E.2d 1110 (2004); People v. Peppers, 352 Ill.App.3d 1002, 288 Ill.Dec. 502, 817 N.E.2d 1152 (2004); People v. Edwards, 353 Ill.App.3d 475, 288 Ill.Dec. 879, 818 N.E.2d 814 (2004). While the outcome in all four cases is consistent  finding the statute not unconstitutional on fourth amendment grounds  there is a difference of opinion on how to get there.
The two primary approaches that have emerged in deciding the constitutionality of genetic marker testing are the "special needs test" and the "balancing test." See Hall, 352 Ill.App.3d at 545-46, 287 Ill.Dec. 736, 816 N.E.2d 703. Because we agree that the statute before us is not unconstitutional when analyzed for its reasonableness under the traditional fourth amendment balancing test, we do not consider whether a special need exists that would otherwise support a search conducted under the statute. See United States v. Knights, 534 U.S. 112, 118-19, 122 S.Ct. 587, 591, 151 L.Ed.2d 497, 505 (2001) (the touchstone of the fourth amendment is reasonableness, which can be decided by weighing the promotion of legitimate governmental interests with the individual's expectation of privacy).
The State has a strong and legitimate interest in deterring and prosecuting recidivist criminal acts. Hall, 352 Ill.App.3d at 546-47, 287 Ill.Dec. 736, 816 N.E.2d 703. "Genetic marker collection is closely related to this interest." Hall, 352 Ill.App.3d at 546-47, 287 Ill.Dec. 736, 816 N.E.2d 703. The State also has an interest in establishing the identity of felons. Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d 703. "Genetic marker collection aids the State not only in identifying repeat offenders who attempt to otherwise conceal or alter their identity, thereby solving past and future crimes, but also in eliminating potential suspects or those wrongly convicted of crimes." Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d 703.
Defendant, on the other hand, has a constitutionally protected interest in his privacy. See Hall, 352 Ill.App.3d at 547, 287 Ill.Dec. 736, 816 N.E.2d 703. But because defendant is a convicted person, the extent of defendant's interest in his personal privacy is less than that which is afforded a free person. Hall, 352 Ill.App.3d at 547-48, 287 Ill.Dec. 736, 816 N.E.2d 703. "Our courts have repeatedly held that once a person is convicted as a felon, his identity becomes a matter of state interest and he loses any legitimate expectation of privacy in the identifying information derived from bodily sampling, such as DNA extraction." Hall, 352 Ill.App.3d at 547-48, 287 Ill.Dec. 736, 816 N.E.2d 703. It has also been held that, *740 with respect to genetic marker collection, a blood draw from a convicted person involves only a minimal intrusion. See Hall, 352 Ill.App.3d at 547-48, 287 Ill.Dec. 736, 816 N.E.2d 703.
In balancing these interests, we find that the intrusion on defendant's diminished privacy rights in providing a DNA sample under section 5-4-3(a)(3.5) of the Code is outweighed by the State's interest in preventing recidivism, identifying offenders and solving past and future crimes. See Garvin, 349 Ill.App.3d at 856, 285 Ill.Dec. 953, 812 N.E.2d 773, Hall, 352 Ill.App.3d at 547-48, 287 Ill.Dec. 736, 816 N.E.2d 703; Peppers, 352 Ill.App.3d at 1006-07, 288 Ill.Dec. 502, 817 N.E.2d 1152; Ramos, 353 Ill.App.3d at 154-155, 288 Ill.Dec. 460, 817 N.E.2d 1110; Edwards, 353 Ill.App.3d at 484, 288 Ill.Dec. 879, 818 N.E.2d 814. On this ground, we conclude the statute is constitutional.
The judgment of the circuit court is affirmed.
Affirmed.
McBRIDE and O'MALLEY, JJ., concur.