NO. 4-03-0775
 IN THE APPELLATE COURT
 OF ILLINOIS
  
 FOURTH DISTRICT
|THE PEOPLE OF THE STATE OF |) |Appeal from |
|ILLINOIS, |) |Circuit Court of |
|             |) |Livingston County |
|Plaintiff-Appellee, |) |No. 03CF87 |
|             v. |) |Honorable |
|             SAMUEL KELLY, |) |Harold J. Frobish, |
|Defendant-Appellant. |) |Judge Presiding. |
| |) | |
| |) | |
| |) | |
| |) | |
| |  | |

[pic]
JUSTICE APPLETON delivered the opinion of the court:
In June 2003, at a trial in absentia, a jury convicted defendant,
Samuel Kelly, of unlawful possession of cannabis (more than 30, but
less than 500, grams), a Class 4 felony (720 ILCS 550/4(d) (West
2002)). The trial court later sentenced him, again in absentia, to
five years in prison. Upon defendant's motion, the court found
defendant was entitled to a new sentencing hearing because he was in
custody in another county at the time of his initial sentencing
hearing. At the rehearing, the court sentenced defendant to 4 years in
prison with credit for 63 days for time served. The court recommended
defendant for impact incarceration. The court denied defendant's other
posttrial and postsentencing motions.
Defendant appeals, arguing that (1) the State failed to prove him
guilty beyond a reasonable doubt; (2) the statute (730 ILCS 5/5-4-3
(West 2002)) requiring convicted felons to submit blood, saliva, or
tissue samples to the Illinois Department of State Police (State
Police) is unconstitutional; (3) the trial court abused its discretion
by ordering the reimbursement of attorney fees without determining
defendant's ability to pay; and (4) he is entitled to an additional
day of sentencing credit. We affirm as modified and remand with
directions.
 I. BACKGROUND
The charges against defendant grew out of the facts primarily
testified to at trial by Daniel Davis, a Pontiac police officer. He
testified that on the evening of March 21, 2003, he participated in
the execution of a search warrant conducted at 937 North Mill Street.
The house was believed to be owned by Nathaniel Strong. Davis and
other members of the tactical response team (TRT) approached the
residence and, before officers could knock on the door, Roanna
Donaldson opened it. The officers entered the house and observed
defendant and Reginald Williams in the bedroom. Davis noticed a
"strong odor of burnt cannabis in the air." Once the suspects were
transported to jail, Davis noticed a backpack lying on the living room
floor. The backpack had protruding from it a plastic bag containing
what appeared to be cannabis. Davis had not seen the backpack when he
entered the house, and it was not in the bedroom with defendant and
Williams.
Donaldson testified that she lived at the North Mill residence with
her boyfriend, Strong. She was not at home when defendant and Williams
arrived. When shown a photograph of the backpack with the plastic bag
lying on top, Donaldson said she did not recognize the backpack--it
did not belong to her or Strong. She said the backpack was not at the
house when she had left for work that morning. She said Williams and
defendant were smoking a "blunt" (cannabis rolled in cigar paper) in
her house before the police arrived.
On cross-examination, Donaldson said she knew Williams, whom she
identified as Strong's "main [drug] supplier," but she did not know
defendant. She said Strong sold drugs out of the North Mill residence.
Donaldson was not charged with any offense that evening and was not
fingerprinted.
Kerry Nielsen, a forensic scientist with the State Police, testified
that he analyzed the substance found in the backpack and confirmed the
plastic bag contained 90 grams of cannabis.
Daron Bagnell, a Pontiac police officer, testified that he was part of
the TRT. Like Davis, Bagnell noticed the odor of burnt cannabis in the
house and found a partially burned blunt in the bedroom where
defendant and Williams were first located. Bagnell said he first saw
the backpack after the residence was secure and defendant, Williams,
and Donaldson were detained. He said Williams was sitting on the floor
in the living room and "kept his attention focused over to this one
corner of the living room where this backpack [w]as sitting." When
Bagnell approached the backpack, he saw a plastic resealable bag
containing what appeared to be cannabis sticking out of the top.
On cross-examination, Bagnell estimated that the blunt contained three
to four grams of cannabis.
Mike Willis, a detective with the Pontiac police department, testified
that he was executing a warrant on Strong at the time the TRT executed
the warrant at the North Mill residence. After he arrested Strong,
Willis went to the residence to assist in the search. Bagnell pointed
out the backpack to Willis, saying they "ha[d] got quite a bit of
cannabis right there in plain view." Willis field-tested a small
portion of the contents of the plastic bag and found the presence of
cannabis.
Willis indicated he seized from the residence the blunt found in the
bedroom, the backpack with the plastic bag containing cannabis found
in the living room, and a box of Swisher Sweet cigars found on
defendant's person. The blunt was rolled in Swisher Sweet cigar paper.
Later in the evening, with defendant's consent, Willis interviewed
defendant. Defendant told Willis he rode to Pontiac with a friend of
his who had planned to meet Strong. They first went to Strong's house,
the North Mill residence. When Willis asked defendant about the
plastic bag, defendant denied seeing it or knowing it was there.
Willis said he asked defendant if a fingerprint analysis conducted on
the bag would reveal the presence of defendant's prints. Willis said
defendant "then put his head down and said, 'okay, I will be honest
with you.'"
Willis then testified as follows:
"He [(defendant)] then said, yes, he was familiar with the bag of
cannabis, that they had been smoking from the bag, that he himself had
rolled a blunt of cannabis with the Swisher Sweets from that bag. And
he said that he was smoking the actual blunt that he had just rolled
from that bag when the TRT team [sic] came into the front door. He
said he discarded the blunt on the floor in the bedroom which I later
recovered."
Willis said the plastic bag was sent for fingerprint analysis and only
an unidentified latent print was found.
At the close of its evidence, the State offered four exhibits that
were admitted without objection and then rested. Defendant rested
without presenting any evidence. After deliberations, the jury found
defendant guilty of unlawful possession of between 30 and 500 grams of
cannabis.
On July 28, 2003, the trial court conducted a sentencing hearing in
absentia and imposed a five-year prison term with credit for two days
for time served. The court then noted that defendant had an
outstanding bond in the amount of $2,000, subtracted court costs, and
awarded the remainder to the public defender as reimbursement for
attorney fees.
On July 29, 2003, defendant appeared before the trial court in custody
and reported he had been in the Cook County jail since July 5, 2003.
Defendant said he did not appear at his trial because he did not have
a ride to Livingston County.
On August 11, 2003, the trial court conducted a status hearing at
which private counsel appeared on defendant's behalf. Upon entry of
that attorney's appearance, the court vacated the appointment of the
public defender. The parties agreed defendant was entitled to a new
sentencing hearing because he had been in custody in Cook County at
the time of his sentencing hearing.
On September 2, 2003, defendant filed a motion for a new trial,
alleging primarily that the State failed to prove him guilty beyond a
reasonable doubt and it was error for the trial court to conduct the
trial in absentia. He also filed a separate motion to vacate the trial
in absentia, pursuant to section 115-4.1(e) of the Code of Criminal
Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/115-4.1(e)
(West 2002) (defendant's failure to appear was not his fault and was
due to circumstances beyond his control)), alleging he had no personal
knowledge of the date scheduled for trial.
On September 5, 2003, the trial court conducted a hearing on
defendant's motions. In support, defendant testified that he did not
appear at his trial because he was unable to secure transportation to
Livingston County. The court denied defendant's motions and sentenced
him to 4 years in prison with credit for 63 days served. Defense
counsel moved instanter to reconsider the sentence, and the court
denied defendant's request. The court neither vacated nor amended the
reimbursement order. This appeal followed.
 II. ANALYSIS
 A. Sufficiency of the Evidence
The State prosecuted defendant for the constructive possession of more
than 30, but less than 500, grams of cannabis, a Class 4 felony. 720
ILCS 550/4(d) (West 2002). The central question at trial was whether
defendant possessed the plastic bag containing cannabis found inside
the backpack. Defendant claims Willis's testimony that defendant had
told him he personally rolled a blunt using the cannabis from the bag
was not sufficient to convict him. We disagree.
"It is the jury's function to determine the accused's guilt or
innocence, and this court will not reverse a conviction unless the
evidence is so improbable as to justify a reasonable doubt of
defendant's guilt." People v. Frieberg, 147 Ill. 2d 326, 359, 589
N.E.2d 508, 524 (1992). "When a defendant challenges the sufficiency
of the evidence, the relevant inquiry is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational
trier of fact could have found the essential elements of the crime
beyond a reasonable doubt." People v. Woods, 214 Ill. 2d 455, 470, 828
N.E.2d 247, 257 (2005). "The requirement that a defendant's guilt be
proved beyond a reasonable doubt does not mean that inferences flowing
from the evidence should be disregarded." People v. Schmalz, 194 Ill.
2d 75, 81, 740 N.E.2d 775, 778 (2000).
The Cannabis Control Act provides in part that "[i]t is unlawful for
any person knowingly to possess cannabis." 720 ILCS 550/4 (West 2002).
Possession may be actual or constructive. Here, the jury was
instructed on both. For actual possession, "the State must prove that
the defendant had knowledge of the presence of the controlled
substance and that he or she also had immediate and exclusive
possession or control of the narcotics." Woods, 214 Ill. 2d at 466,
828 N.E.2d at 254.
On the other hand, "[c]onstructive possession may exist even where an
individual is no longer in physical control of the drugs, provided
that he once had physical control of the drugs with intent to exercise
control in his own behalf, and he has not abandoned them and no other
person has obtained possession." People v. Adams, 161 Ill. 2d 333,
345, 641 N.E.2d 514, 519-20 (1994). "Constructive possession exists
without actual personal present dominion over a controlled substance,
but with an intent and capability to maintain control and dominion."
Frieberg, 147 Ill. 2d at 361, 589 N.E.2d at 524. "[W]hether there is
possession or control [is a] question[] of fact to be determined by
the trier of fact." Schmalz, 194 Ill. 2d at 81, 740 N.E.2d at 779.
Defendant was not in actual possession of the cannabis, and no
contraband was found on his person. Although there was no evidence
indicating who owned the backpack or who carried it into the
residence, there was evidence connecting defendant to the plastic bag.
According to Willis, defendant said he had rolled a blunt using the
cannabis in the plastic bag and was smoking that blunt at the time of
the raid. Despite the fact that defendant's fingerprints did not
appear on the bag, the evidence presented at trial was sufficient for
a reasonable trier of fact to convict defendant of possession. The
evidence indicated that defendant, at least temporarily, had physical
and intentional control and dominion over the cannabis and had not
attempted to abandon the bag to the exclusion of someone else's
control. After viewing the evidence in a light most favorable to the
prosecution, we affirm defendant's conviction.
 B. Constitutionality of the Statute
 Compelling Extraction of DNA From Convicted Felons

Defendant claims the ordered extraction of his deoxyribonucleic acid
(DNA) violates his right to be free from unreasonable searches
pursuant to the fourth amendment of the United States Constitution and
article I, section 6, of the Illinois Constitution (U.S. Const.,
amend. IV; Ill. Const. 1970, art. I, §6). Section 5-4-3(a) of the
Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4-3(a) (West
2002)) requires that persons convicted of "any offense classified as a
felony under Illinois law *** shall, regardless of the sentence or
disposition imposed, be required to submit specimens of blood, saliva,
or tissue to the Illinois Department of State Police." Whether a
particular statute violates a defendant's constitutional rights is a
question of law that we review de novo. People v. Malchow, 193 Ill. 2d
413, 418, 739 N.E.2d 433, 437 (2000).
Section 5-4-3(f) of the Unified Code sets forth the purpose of the
mandatory DNA extraction as follows:
"The genetic marker grouping analysis information obtained pursuant to
this Act shall be used only for (i) valid law enforcement
identification purposes and as required by the Federal Bureau of
Investigation for participation in a National DNA database or (ii)
technology validation purposes." 730 ILCS 5/5-4-3(f) (West 2002).
This court recently addressed this issue in People v. Hunter, 216 Ill.
App. 3d ___, 831 N.E.2d 1192 (2005). There, in applying the balancing
test, we found the State's interest outweighs a convicted felon's
diminished privacy rights. Hunter, 216 Ill. App. 3d at ___, 831 N.E.2d
at 1198. We upheld the constitutionality of the statute, limiting our
holding to section 5-4-3(a)(3.5) (730 ILCS 5/5-4-3(a)(3.5) (West
2002)). Hunter, 216 Ill. App. 3d at ___, 831 N.E.2d at 1194. Here, we
apply the same analysis and reach the same conclusion, but expand our
holding to encompass section 5-4-3 (730 ILCS 5/5-4-3 (West 2002)) in
its entirety.
Other districts of the appellate court have considered the issue as
well. See People v. Jennings, No. 1-03-3207, slip op. at 16-17 (June
2, 2005), ___ Ill. App. 3d ___, ___ N.E.2d ___ (First District);
People v. Redmond, 357 Ill. App. 3d 256, 263, 828 N.E.2d 1206, 1212-13
(2005) (First District); People v. Chamberlain, 354 Ill. App. 3d 1070,
822 N.E.2d 914 (2005) (Third District); People v. Foster, 354 Ill.
App. 3d 564, 821 N.E.2d 733 (2004) (First District); People v. Butler,
354 Ill. App. 3d 57, 819 N.E.2d 1133 (2004) (First District); People
v. Edwards, 353 Ill. App. 3d 475, 818 N.E.2d 814 (2004) (First
District); People v. Smythe, 352 Ill. App. 3d 1056, 817 N.E.2d 1100
(2004) (First District); People v. Peppers, 352 Ill. App. 3d 1002, 817
N.E.2d 1152 (2004) (First District); People v. Ramos, 353 Ill. App. 3d
133, 817 N.E.2d 1110 (2004) (First District); People v. Hall, 352 Ill.
App. 3d 537, 816 N.E.2d 703 (2004) (First District); People v. Garvin,
349 Ill. App. 3d 845, 812 N.E.2d 773 (2004) (Second District), appeal
allowed, 212 Ill. 2d 541, 824 N.E.2d 287 (2004); In re Robert K., 336
Ill. App. 3d 867, 785 N.E.2d 562 (2003) (Second District); People v.
Calahan, 272 Ill. App. 3d 293, 649 N.E.2d 588 (1995) (First District);
People v. Wealer, 264 Ill. App. 3d 6, 636 N.E.2d 1129 (1994) (Second
District). In Garvin, the Second District noted that every state and
the District of Columbia had enacted similar mandatory genetic testing
statutes, all of which have withstood similar constitutional
challenges. See Garvin, 349 Ill. App. 3d at 853-54, 812 N.E.2d at 781.
The United States Supreme Court has held that the extraction of a
biological sample is a search within the meaning of the fourth
amendment. Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 616,
103 L. Ed. 2d 639, 659, 109 S. Ct. 1402, 1412-13 (1989). In
considering whether the extraction of DNA is constitutional for the
purposes set forth in their state's respective statutes, the courts
nationwide have applied one of the two following approaches: a
balancing test or a special-needs test. Garvin, 349 Ill. App. 3d at
855, 812 N.E.2d at 782. The special-needs test requires the government
to demonstrate a need "'beyond normal law enforcement'" to justify the
warrantless search. Garvin, 349 Ill. App. 3d at 855, 812 N.E.2d at
782, quoting Wealer, 264 Ill. App. 3d at 11, 636 N.E.2d at 1133.
Illinois courts have favored the balancing test over the special-needs
approach (see Garvin, 349 Ill. App. 3d at 855, 812 N.E.2d at 782;
Redmond, 357 Ill. App. 3d at 263, 828 N.E.2d at 1213) because the
statute has an "ostensible law enforcement purpose," obviating the
need to identify a purpose above and beyond the normal needs of law
enforcement. Wealer, 264 Ill. App. 3d at 14, 636 N.E.2d at 1135.
Following our Illinois precedent, we too find the reasoning of the
balancing approach more persuasive than its counterpart. The balancing
test refers to balancing the State's interests in obtaining DNA
profiles, the degree to which the DNA profiles actually advanced that
interest, and the gravity of intrusion upon personal privacy to
determine whether the search is reasonable. Wealer, 264 Ill. App. 3d
at 14, 636 N.E.2d at 1135. We adopt the decision in Garvin and find
the State's interests in deterring and prosecuting recidivist criminal
activity, coupled with the scientific accuracy of identifying a person
through his or her DNA, outweighs the minimal intrusion a convicted
felon, whose identity is a matter of state interest, experiences from
a blood draw. See Garvin, 349 Ill. App. 3d at 855-56, 812 N.E.2d at
782-83.
Defendant argues that Illinois precedent is contrary to the United
States Supreme Court's holdings in City of Indianapolis v. Edmond, 531
U.S. 32, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000) (random search of
car with drug-sniffing dog), and Ferguson v. City of Charleston, 532
U.S. 67, 149 L. Ed. 2d 205, 121 S. Ct. 1281 (2001) (test results of
pregnant women in hospital for cocaine use reported to police), which
required the government to identify a special need of law enforcement
before performing a nonconsensual, warrantless, and suspicionless
search and before a court should proceed to a balancing test. Other
districts of our appellate court have previously addressed and
dismissed the identical concern posed by defendant here. See Ramos,
353 Ill. App. 3d at 148-49, 817 N.E.2d at 1124-25; Butler, 354 Ill.
App. 3d at 65-66, 819 N.E.2d at 1138-40.
Edmond and Ferguson set forth the requirement that the special-needs
test be applied when evaluating the execution of a warrantless search.
See Edmond, 531 U.S. at 41, 148 L. Ed. 2d at 343, 121 S. Ct. at 454;
Ferguson, 532 U.S. at 84, 149 L. Ed. 2d at 220, 121 S. Ct. at 1291-92.
However, the program or policy at issue in those cases was designed to
affect members of the general public, not criminal defendants.
It is axiomatic that the government cannot randomly (without suspicion
or cause) fingerprint or photograph law-abiding members of the general
public. Those who have become enmeshed in our criminal justice system,
by way of a criminal conviction, are distinguishable from other
members of our society. The United States Supreme Court has held that
a convicted criminal experiences a diminished expectation of privacy
than that normally afforded to individual citizens. United States v.
Knights, 534 U.S. 112, 118-19, 151 L. Ed. 2d 497, 505, 122 S. Ct. 587,
591 (2001) (those in prison, on probation, parole, or conditional
release have diminished expectations of privacy).
Because defendant, as a convicted felon, experiences a diminished
expectation of privacy, the reasonableness of a warrantless search can
be analyzed outside the strictures of the special-needs approach. See
Ramos, 353 Ill. App. 3d at 153, 817 N.E.2d at 1128; Butler, 354 Ill.
App. 3d at 65-66, 819 N.E.2d at 1139-40, citing United States v.
Kincade, 379 F.3d 813 (9th Cir. 2004) (special needs does not apply to
conditional releasee's extraction of DNA under federal law), and
Knights, 534 U.S. at 122, 151 L. Ed. 2d at 507, 122 S. Ct. at 593
(Court rejected special-needs test where probationer was required to
submit to a warrantless search at any time as condition of probation).

For the foregoing reasons and consistent with all of the Illinois
courts that have thus far addressed the issue, we find section 5-4-3
of the Unified Code (730 ILCS 5/5-4-3 (West 2002)) is not
unconstitutional. The statute does not violate the fourth amendment of
the United States Constitution or article I, section 6, of the
Illinois Constitution. We affirm the court's order requiring defendant
submit to genetic testing.
 C. Reimbursement of Attorney Fees
Defendant next claims the trial court erred in ordering payment to the
public defender from defendant's forfeited bond without first
conducting a hearing to determine if defendant had the ability to pay.
On July 28, 2003, at the sentencing hearing held in absentia, the
trial court ordered the following:
"[Defendant] has $2,000, and that bond was never forfeited. We have
Mr. Casson[,] who ably represented the defendant at trial. We need to
do something with that bond. I can take all of it as attorney[] fees.
I don't find a forfeiture order there.
 * * *
So, it is ordered in [No. 0]3-CF-87 that court costs, crime victim's
fund [fines totaling $890] are taken from the $2,000; and the balance
is ordered taken for attorney[] fees for the fine representation by
Mr. Casson."
Without determining the reasonableness of the fee, the trial court
ordered $1,110 be paid to the public defender's office as
reimbursement. Defendant contends the court erred in ordering the fees
without conducting a hearing on his ability to pay pursuant to section
113-3.1 of the Code of Criminal Procedure (725 ILCS 5/113-3.1 (West
2002)). Our supreme court has explicitly held that it is error for a
trial court to order reimbursement without conducting an ability-to-
pay hearing. People v. Love, 177 Ill. 2d 550, 687 N.E.2d 32 (1997).
Love, which was decided in the context of section 113-3.1, not section
115-4.1(a), of the Code of Criminal Procedure, is distinguishable from
defendant's case. Section 113-3.1 allows for reimbursement of court-
appointed attorney fees only after the trial court determines at a
hearing whether the fees are reasonable and whether the defendant has
the ability to pay. See 725 ILCS 5/113-3.1 (West 2002). This section
does not apply when a defendant's trial was conducted in absentia.
Section 115-4.1(a) of the Code of Criminal Procedure (725 ILCS 5/115-
4.1(a) (West 2002)), which governs proceedings in the defendant's
absence, sets forth in relevant part as follows:
"The court, at the conclusion of all of the proceedings, may order the
clerk of the circuit court to pay counsel such sum as the court deems
reasonable, from any bond monies which were posted by the defendant
with the clerk, after the clerk has first deducted all court costs."
Under this section, the defendant does not pay the fees. The clerk of
the circuit court pays the fees out of the bond initially posted, and
later forfeited, by the defendant. The fact that a defendant caused
his bond to be forfeited by failing to appear at trial makes his
ability to pay irrelevant and, consequently, the requirements of
section 113-3.1 and Love inapplicable.
To comply with the statutory mandate that the fees be reasonable, the
trial court should conduct a hearing to determine the award. See
People v. Maya, 105 Ill. 2d 281, 289, 473 N.E.2d 1287, 1291 (1985)
(remanded for hearing to determine reasonableness of fees). In
determining the reasonableness of a fee, the court should consider (1)
the time spent and the services rendered, (2) the attorney's skill and
experience, (3) the complexity of the case, (4) trial costs, and (5)
overhead expenses. Maya, 105 Ill. 2d at 289, 473 N.E.2d at 1291. A
reasonable fee should be awarded after the costs and before the fines
are deducted from the forfeited bond amount. People v. Barraza, 193
Ill. App. 3d 655, 661, 550 N.E.2d 59, 63 (1990).
In this case, the trial court did not address any of the individual
factors set forth above nor did it make a summary determination of the
reasonableness of the fees. The court first subtracted the ordered
fines and costs from defendant's forfeited bond and then awarded the
remaining amount as reimbursement to the public defender.
Procedurally, the court did not comply with the statute in determining
the reasonableness of the award or with case law in awarding fees
before the fines were deducted.
The State contends defendant forfeited review of this issue by failing
to raise it in the trial court. Defendant responds, relying on Love,
177 Ill. 2d 550, 687 N.E.2d 32, by arguing that we should review the
matter as plain error. We decline to do so.
In Love, the court reviewed a reimbursement-of-attorney-fees order
despite the defendant's procedural default in raising it for the first
time on appeal. The court held that because "the trial court wholly
ignored the statutory procedures" prior to ordering a reimbursement of
fees, fairness dictated that waiver should not be applied. Love, 177
Ill. 2d at 564, 687 N.E.2d at 39. The court held that the trial
court's failure to conduct a hearing to determine whether the
defendant had the ability to pay the attorney fees as ordered was
unfair to the defendant and justified reversal. Love, 177 Ill. 2d at
564, 687 N.E.2d at 39. The court found that the hearing requirement
set forth in section 113-3.1 of the Code of Criminal Procedure (725
ILCS 5/113-3.1 (West 1996)) was enacted as a procedural "safeguard
designed to insure that a reimbursement order entered under that
section meets constitutional standards." Love, 177 Ill. 2d at 564, 687
N.E.2d at 39. Because the defendant was denied a procedure to which he
was entitled and because that denial may have prejudiced him, the
court declined to enforce the "waiver rule." Love, 177 Ill. 2d at 564,
687 N.E.2d at 39.
The same is not true here. Although the trial court "wholly ignored
the statutory procedures" set forth in section 115-4.1(a) of the Code
of Criminal Procedure (725 ILCS 5/115-4.1(a) (West 2002)), we cannot
say defendant was prejudiced by the court's decision in order to
justify an application of the plain-error doctrine. Pursuant to
Barraza, the court was required to first deduct costs, then determine
a reasonable fee before deducting that amount from defendant's
forfeited bond. Then, if any amount remained, the court should order
payment of the fines. See Barraza, 193 Ill. App. 3d at 661, 550 N.E.2d
at 63.
According to the reimbursement order entered in the case sub judice,
defendant's forfeited bond was sufficient to cover payment for all of
defendant's fines and costs and his attorney fees. We do not see how
the trial court's error substantially affected defendant's rights to
justify reversal in light of his failure to object in the trial court.
See People v. Hausman, 287 Ill. App. 3d 1069, 1071, 679 N.E.2d 867,
869 (1997) (plain-error rule applies when the error is so fundamental
a defendant may have been denied a fair sentencing hearing); People v.
Herron, 215 Ill. 2d 167, 177, 830 N.E.2d 467, 474 (2005) (purpose of
plain-error doctrine is to protect the rights of the defendant).
Because defendant would not benefit from a hearing on remand, we find
his failure to object to the order in the trial court precludes our
review under the plain-error doctrine.
 D. Additional Credit
Finally, defendant contends he is entitled to an additional day of
sentencing credit based upon a miscalculation of the time spent in
custody. The trial court awarded defendant 63 days' credit for time
served between March 21 and 22, 2003, and July 6, 2003, to September
5, 2003. Because he is entitled to credit for any part of a day that
he is in custody (see People v. Steskal, 236 Ill. App. 3d 821, 823,
602 N.E.2d 977, 978-79 (1992)), defendant claims he is entitled to 64
days' credit. The State concedes the error, and we accept the State's
concession.
Based upon the amount of time defendant spent in custody, we agree
with the parties and find he is entitled to 64 days' credit against
his sentence. Accordingly, we modify the sentence and remand this
cause to the trial court to amend the written judgment of sentence to
reflect credit for 64 days served with credit for an additional $5
toward his fines.
 III. CONCLUSION
For the reasons stated, we affirm defendant's conviction and remand to
amend the judgment of sentence to reflect credit for 64 days of
prejudgment incarceration and the concomitant monetary credit toward
the fines imposed.
Affirmed as modified; cause remanded with directions.
TURNER and STEIGMANN, JJ., concur.